MARY A. RAND, ADMRX., v. A. D. KING.

APPEAL BY E. B. LONG, ADMR., FROM THE COURT OF COM-
    MON PLEAS OF LUZERNE COUNTY.

Argued April 15, 1890—Decided May 12, 1890.
[To be reported.]

1. The modes of reviewing cases in the Supreme Court by writ of error,
   by appeal, and by writ of certiorari, which were in use prior to the act
   of May 9, 1889, P. L. 158, still remain applicable in the same kinds of
   cases, within the same limits and with the same effect as before, the
   only difference made by that act being that now they are all called by the
   same name.
2. An appeal, under said act, from an order made by the Court of Com-
   mon Pleas, striking from the record an entry of satisfaction of a judg-
   ment, has the effect simply of a common-law writ of certiorari, wherein
   nothing comes before the Supreme Court but the record proper, and the
   only inquiry is whether that exhibits a proceeding that is regular and in
   accordance with law.
3. It is error, upon the petition of a stranger to the record alleging title
   to a judgment, to set aside in a summary way an entry of satisfaction
   made by the plaintiff: such a claimant of title must establish it, if de-
   nied, in the regular way by an issue before a jury, and get upon the
   record by an order of the court, before he can interfere with entries
   made by the parties.

Before STERRETT, GREEN, CLARK, WILLIAMS and McCOL-
LUM, JJ.

No. 131 January Term 1890, Sup. Ct.; court below, No. 220
January Term 1887, C. P.

On November 27, 1876, judgment in default of an appear-
ance by the defendant was entered for $1,117.75, in favor of
Mary A. Rand, administratrix of the estate of George W. Rand,
deceased, in an action of debt brought upon a note signed by
the defendant. The attorney appearing of record for the
plaintiff was Mr. Q. A. Gates. On October 25, 1881, the
death of the defendant was suggested upon the record and
Mr. Q. A. Gates, who had become his administrator, was sub-
stituted as defendant. Upon the same day a writ of scire fa-
cias to revive the judgment was issued against Mr. Gates,
administrator, etc., by Mr. Alexander Farnham as attorney for

Statement of Facts.

the plaintiff. The defendant in the scire facias pleaded payment, and by agreement the cause was referred to *Mr. Nathan Bennett*, as referee. On March 10, 1882, judgment was entered upon the report of the referee, in favor of the plaintiff, for $1,548.11. On December 16, 1887, a writ of scire facias upon the latter judgment was issued against Mr. Gates, administrator, etc., with notice to terre-tenants, to No. 220 January Term 1887, in the court below, and, after return thereof, judgment for the plaintiff in the sum of $2,023.64 was entered for want of an appearance by the defendant.

On November 3, 1888, the following entry was made upon the record at the number and term of the second revival:

" By virtue of a letter of attorney to me directed by the plaintiff, Mary A. Rand, (now Stearns,) I acknowledge satisfaction of the above stated judgment, debt, interest and costs.

" HENRY W. PALMER,

" Attorney in fact."

The power of attorney, by virtue of which this acknowledgment of satisfaction was made by Mr. Palmer, was executed by the plaintiff on October 25, 1888, before a notary public, and therein the plaintiff acknowledged receipt of the full amount of the debt, interest and costs of the judgment, and appointed " Alex. Farnham, or any other attorney of record in Luzerne county," her attorney in fact to enter satisfaction upon the record.

On November 5, 1888, Mr. Gates petitioned the court below to strike off the entry of satisfaction, averring by affidavit " that said judgment did not belong to Mary E. Stearns, nor to the estate of Geo. Rand; nor has it belonged to said estate for the last ten years; nor had the said Mary E. Stearns any right to satisfy the same; . . . . . that great injustice will be done if said satisfaction is not stricken off at once; that said judgment belongs to the estate of Hon. W. W. Ketcham, deducting therefrom the fees and charges of petitioner, who was the attorney who brought the suit, and in whose charge said judgment has been." Thereupon the court granted a rule to show cause why the satisfaction should not be stricken off.

It did not appear from the docket entries printed in the paper-books, upon whom this rule was served. Depositions were taken under it on behalf of the petitioner and on behalf

Statement of Facts.

of E. B. Long, who had succeeded Mr. Gates as administrator of the estate of A. D. King, deceased. The petitioner testified, under objection, that the note upon which the original judgment was recovered, had been placed in the hands of Mr. W. W. Ketcham, now deceased, for collection, in connection with the settlement of the estate of George W. Rand, deceased; that Mr. Ketcham, having settled with and paid the creditors of said estate, upon the assumption that the note was an available asset, and having gone upon the bench as judge of the District Court of the United States, placed the note in the hands of the witness, saying that it now belonged to him, Mr. Ketcham, and that, upon succeeding in collecting it, the witness should have the half of it for so doing, and the witness subsequently entered the suit in which the original judgment was recovered. The depositions tended to show that the plaintiff did not receive payment of any part of the judgment at the time of signing the power of attorney to satisfy, or at any other time; that she did not know of the judgments recovered in her name, and was unaware even of the existence of the note, until she was informed of it by Long; that Long told her he was investigating to ascertain whether the note was paid or not, advised her to have nothing to do with Mr. Gates, who, he said, claimed to have bought the note from Mr. Ketcham and was endeavoring to collect the money; and that, at the request of Long, she signed the power to satisfy without having read it over, in consideration of a promise by Long that if anything was found to be due her he would pay it.

On November 18, 1889, after argument, the court, Woodward, J., without opinion filed, made the rule to show cause absolute; whereupon E. B. Long, administrator of A. D. King, deceased, took this appeal, assigning the order making said rule absolute, for error.

When the cause was called for argument in the Supreme Court, a motion to quash the appeal was filed, the grounds thereof appearing in the argument on behalf of the appellee.

*Mr. H. W. Palmer* and *Mr. J. Vaughan Darling*, for the appellant:

Mr. Gates was not a competent witness to anything that

Arguments.

occurred before the death of King, nor a competent witness to show ownership of, or an interest in the note, either in himself or in the estate of Mr. Ketcham, as against the estate of George W. Rand: Act of May 23, 1887, P. L. 158. The power of attorney given by the plaintiff having been acted on, it is an executed contract and can be set aside only on proof of fraud, accident or mistake, of which there is not sufficient evidence: Kerr's App., 104 Pa. 282; Greenfield's Est., 14 Pa. 496; Penna. R. Co. v. Shay, 82 Pa. 198; Sylvius v. Kosek, 117 Pa. 67; Murray v. Railroad Co., 103 Pa. 37; Phillips v. Meily, 106 Pa. 536; Juniata B. Ass'n v. Hetzel, 103 Pa. 507.

*Mr. Q. A. Gates* (with him *Mr. Alfred Darte*), for the appellee:

1. We move to quash the writ for two reasons: First, no writ of error lies to review an order striking off the satisfaction of a judgment: Murphy v. Flood, 2 Gr. 411; McKinney v. Fritz, 2 W. N. 173; Holland v. White, 120 Pa. 228; Carlson's License, 127 Pa. 330; Re Weaver, 116 Pa. 225; Reed's App., 114 Pa. 452; Darby v. Sharon Hill, 112 Pa. 66; Bain v. Funk, 61 Pa. 185. Second, there being no bill of exceptions, this court has nothing before it for review: Yard v. Pancoast, 108 Pa. 384; Warsaw Tp. Poor D. v. Knox Tp. Poor D., 107 Pa. 301; Merkel v. Berks Co., 81* Pa. 505; Northumb. Co. Bank v. Eyer, 60 Pa. 436. A certiorari does not bring up the depositions.

2. The competency of Mr. Gates is immaterial upon the real question in the case, that of fraud in procuring the satisfaction from the plaintiff without paying a cent for it. Her power of attorney is no more than a receipt, which is open to correction: Shoemaker v. Stiles, 102 Pa. 549; Russell v. Church, 65 Pa. 9; Wharton on Contracts, § 938; Borlin v. Highberger, 104 Pa. 143; McGrann v. Railroad Co., 111 Pa. 171. The parol promise given for it is not enforceable against the appellant: Act of April 26, 1855, P. L. 308; nor against his decedent's estate: § 24, act of February 24, 1834, P. L. 77. Whether the legal plaintiff or her attorney is entitled to the money, is no concern of the defendant: Montgomery v. Cook, 6 W. 238; Hamilton v. Brown, 18 Pa. 87; Landmesser's App., 126 Pa. 115; Stackhouse v. O'Hara, 14 Pa. 89.

Opinion of the Court.

OPINION, MR. JUSTICE WILLIAMS:

The contents of the paper-books, and the character of the oral suggestions made in this case, and some others at the present term, lead us to believe that it is desirable to call attention once more to the difference between the several modes of review in use in this state.

Prior to the act of May 9, 1889, there were three of these in common use, and the peculiar characteristics of each were well understood by the profession. That most generally employed was the writ of error, which lay against any final judgment in any court of record, and against such interlocutory and auxiliary orders as have been made reviewable upon it by statute. On this writ the judgment is reviewed with reference to alleged errors which are pointed out by exceptions taken to the action of the trial court at the time when the rulings are made, and as a general rule the power of the Supreme Court is limited to the questions so raised: Warsaw Tp. Poor D. v. Knox Tp. Poor D., 107 Pa. 301. In all equity cases, and those following the equity forms, an appeal from the decree complained of is the proper mode of review. It brings up the pleadings and the evidence on which the decree rests, and makes it necessary for the appellate court to examine, and see whether the decision is just and conscionable on the case that was presented to the chancellor who made it. The remaining method was by writ of certiorari. This writ brought up the record in any given case for review and correction, but it brought the record only: Carlson's License, 127 Pa. 330; Holland v. White, 120 Pa. 228. The errors to be corrected must appear on the face of the record: Chase v. Miller, 41 Pa. 403; and the merits cannot be inquired into upon this writ, but are left to the judgment of the court below: Election Cases, 65 Pa. 20. Neither the opinion of the court, nor the evidence, forms any part of the record proper, and for that reason they will not be examined on certiorari: Holland v. White, supra. The character of the proceeding to be reviewed, suggested, therefore, the method to be adopted, and the limits within which the practitioner should direct his preparation.

Since the act of 1889, these modes remain applicable in the same cases, within the same limits, and with the same effect as before, the only difference being that now they are all called

Opinion of the Court.

by the same name.  That act provides "that all appellate pro-
ceedings in the Supreme Court heretofore taken by writ of
error, appeal, or certiorari shall hereafter be taken in a proceed-
ing to be called an appeal."  It will be noticed that this act
does not profess to extend the right of review, to change its
extent in cases already provided for, or to modify in any man-
ner its exercise.  It simply provides that dissimilar proceed-
ings shall be called by the same name.  An appeal in name
may therefore be a writ of error or a certiorari in legal effect,
and it is necessary, in every case, to look into the record, and
determine at the outset of our examination whether what is
" called an appeal " is such in fact, or is a writ of error or a cer-
tiorari.  The practical effect of calling proceedings so essen-
tially unlike by the same name, is to obscure and divert attention
from the peculiar characteristics of each.  This increases the
sense of uncertainty on the part of the practitioner, and the
labor on the part of the appellate court.  We have in this case
a fair illustration.

In October, 1876, a suit was brought by Q. A. Gates, as attor-
ney for the plaintiff, in favor of Mary A. Rand, administratrix,
against A. D. King.  Judgment was obtained against the de-
fendant in November following, and has been regularly revived.
In 1881, King died, and Gates, the attorney for the plaintiff,
became his administrator, and was substituted as defendant on
the record.  He subsequently resigned, and Long was appointed
in his place.  On the 3d November, 1888, the plaintiff caused
satisfaction of this judgment to be entered on the record.  After-
wards Gates, on a suggestion in writing that he was the owner
of the judgment, obtained a rule to show cause why the entry
of satisfaction should not be struck off.  This rule was made
absolute on the 18th November, 1889.  Long, the present ad-
ministrator of King, appealed from this order, and asks us to
look into the testimony, and reverse the order on the merits.
The plaintiff on the record is not before us.  Gates, as appellee,
moves to dismiss the appeal on the ground that neither a writ
of error nor an appeal lies.  Our first inquiry, therefore, is what
this so-called appeal really is, and what, if any, jurisdiction we
have in the premises.

The judgment is not complained of.  That stands now as it
stood before the entry of satisfaction was made.  The order

complained of relates to an entry on the record of the judgment
which the court has struck off, leaving the judgment in full
force.   The effect of the order is simply to shift the burden of
proof.   While the entry of satisfaction stood, it afforded evi-
dence, prima facie, that the judgment was paid, and the plaintiff
could not proceed on the judgment without overcoming the
prima facie case made against her by her own entry of satisfac-
tion.   Since the order striking it off, the judgment is in the
position it was before the entry was made, and the burden of
showing payment is on the defendant.   Nothing has been done
by the court which is subject to review on writ of error, and, if
this appeal is intended as the equivalent of such writ, the mo-
tion to dismiss is properly made.   It is equally clear that the
order which it is sought to reach is not a decree in equity, and
for that reason an appeal, in the former sense of the word, will
not lie, unless it has been expressly given by statute, and that is
not asserted.   What we have before us is the record of a court
of law which shows a motion to strike off an entry made on the
record by the plaintiff acknowledging satisfaction, and the dis-
position of that motion by the court.   The opinion of the court
below and the evidence are not on the record, and are not before
us, although printed at length in the paper-books.   If we are to
treat this record as before us upon a writ of certiorari, the only
inquiry is whether the proceedings shown by it are regular,
and in accordance with the law.

The judgment was regularly obtained in the name of Mary
A. Rand in 1876, Gates being the attorney for her.   It has
been revived from time to time in the name of the same plaint-
iff by proceedings that are not attacked.   In 1888 it was satis-
fied by the plaintiff in due form, and she has made no application
for relief from her own receipt.   In 1889 the court struck off
this entry of satisfaction at the instance of one who is neither
a party, nor assignee or alienee holding under the party plaint-
iff, but a stranger to the record.   It is true, the petition on which
the motion was based alleges a title in Gates, and this might
have justified the court in granting a rule on Mrs. Rand to
show cause why the judgment should not be marked to the use
of Gates, and, if she denied his title, in directing an issue for
trial before a jury to determine the truth of his assertion of
ownership ; but the court had no more right to try the title to

Opinion of the Court.

this judgment in a summary way, without the aid of a jury, than it would have to determine the title to a horse or a tract of land in the same manner. The court denied to the plaintiff the control of her own judgment, which had stood for twelve years, and still stands, in her favor on the record, at the instance of a stranger to that record, who has not even asked an opportunity to assert his title before a jury, that he may be put on the record as the owner of the judgment. If he owns one half or the whole of the judgment that stands in the name of Mrs. Rand, and she refuses to recognize his title, he must establish his title in the regular way, and get upon the record by an order of the court, before he can exercise the rights of a party, or be allowed to meddle with the entries made by the parties. It may be that he has a good title, and that he satisfied the learned judge who made the order that he was the owner of the judgment. If so, it does not sustain this order. He must first get upon the record. Then he will be clothed with the rights and powers of a party. There is nothing on the record to justify the court below in denying to the plaintiff control of the judgment in her favor, and striking off satisfaction that she has acknowledged.

The order of November 18, 1889, is therefore set aside.